UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

UNITED STATES OF AMERICA

v.   Criminal No. 3:25-cr-00005-GFVT-MAS

HOWARD KEITH HALL,

*Defendant.*

___

### REPLY MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS INDICTMENT
___

Comes the defendant, Howard Keith Hall, by counsel, and files this reply memorandum in support of the Motion to Dismiss Indictment.

The government, citing *United States v. Ali,* 557 F.3d 715 (6th Cir. 2009), argues that the motion to dismiss should be denied because it raises factual issues. Dkt. #23 at 4 (Pg. ID# 190). But, as Judge Hall has noted in his motion, Dkt. 22-1 at 3 (Pg. ID# 129), *Ali* provides that "a defense may be properly raised pursuant to Rule 12 'if trial of the facts surrounding the commission of the alleged offense would be of no assistance in determining the validity of the defense.'" *Ali*, 557 F.3d at 719 (quoting *United States v. Covington*, 395 U.S. 57, 60 (1969)). Moreover, when "undisputed extrinsic evidence" demonstrates that the government is "incapable of proving" an element of the offense, dismissal is appropriate. *United States v. Levin,* 973 F.2d 463, 469 (6th Cir. 1992). The motion to dismiss is grounded on the government's incapability of proving critical

1

elements of the mail fraud and federal program fraud charges. Accordingly, the indictment must be dismissed.

### A. Required materiality for mail or federal program fraud is absent

The government concedes that "a material misrepresentation or concealment of a material fact" is necessary to prove mail fraud. *See* Dkt. #23 at 6 (Pg. ID# 192). And the government acknowledges that the payroll certifications are the heartland of its case. *See* Dkt. #23 at 3-4 (Pg. ID# 189-90) ("[T]he Defendant submitted false payroll certifications to the PAC, every pay period, asserting Attorney A fulfilled his duties as a part time assistant county attorney for Pike County."). It seems to argue reliance on the certifications, *to wit*: "the PAC required signed payroll certifications before any PAC employees were paid." *See* Dkt. #23 at 8 (Pg. ID# 194). But whether the evidence at trial would prove the government's assertion of reliance to be true or not makes no difference.[1] The insurmountable problem for the government is that the payroll certifications say what they say, and what they say was ***not*** materially misleading. No trial is necessary to reach this indisputable conclusion.

The government, to its credit, does not argue that the payroll certifications misrepresented the hours worked by Michael Shane Hall. Rather, it leans on the language of the certifications referencing that the reported employees had "fulfilled all statutory duties."[2] But it was impossible for the payroll certifications to contain material misrepresentations concerning Hall's fulfillment of "statutory duties" as an assistant county attorney because those "statutory duties" were virtually

---

[1] What the evidence at trial might be is still a mystery to Judge Hall and his counsel. Thus far, the government has refused to produce the 302s or other witness statements and related materials. There is one factual matter that, although immaterial to the motion to dismiss, the defense cannot leave unchallenged: the government's suggestion that Judge Hall and Michael Shane Hall did not participate together in the private practice of law and that a negative inference should be drawn from compensation paid to Judge Hall by the practice. Dkt. #23 at 4 (Pg. ID# 190). The fact that they were affiliated in a private law practice was broadly advertised throughout Pike and surrounding counties. It was a well-known fact.
[2] The relevant payroll certifications are in the record. *See* Dkt. #22-1, 22-2.

non-existent. The statute defining those "duties," KRS § 69.300, only requires that assistant county attorneys be licensed to practice in the Commonwealth, reside in the county in which the county attorney is elected or within 30 miles of the county line or in a contiguous county, and be under the direction and control of the county attorney. That's it. There are no other "statutory duties" of an assistant county attorney—part-time or otherwise. They are not required to work any particular number of hours. And the government's assumption that assistant county attorneys must appear in court or work from the county attorney's office is just that, an assumption—and a wrong one. By the prerogative of the Kentucky General Assembly, there are no such "statutory duties." Moreover, the Kentucky Court of Appeals confirmed this point in *Commonwealth v. Craft,* No. 94-CA-001432-MR, in holding that the conduct alleged in the instant indictment is not criminal for this very reason. *See* Dkt. #21-7.

The payroll certifications are simply not materially misleading. They state that the ambiguous "statutory duties" were fulfilled and that Hall worked less than 30 hours per week during the pay period. All of that is true and as the Kentucky Court of Appeals held in *Craft*, does not amount to a crime.

The government does not dispute these points or even attempt to undermine them—because that's not possible. Instead, the government unconvincingly sweeps them aside as "irrelevant state laws and cases," and then, in a most bewildering contention, suggests that the defendant's "invocation of state law" is somehow an "attempt[] to turn a factual issue into a legal one." *See* Dkt. #23 at 7 (Pg. ID# 193). To the contrary, in this instance, it is state law that must provide the legal basis for any contention that there has been a material misrepresentation necessary for a federal fraud offense.

3

In an effort to force a trial, the government unconvincingly cites an inapposite case, *United State v. Gaudin,* 515 U.S. 506, 522-23 (1995), for the suggestion that "[m]ateriality is fundamentally an element for the jury to decide." *See* Dkt. #23 at 8 (Pg. ID# 194). But the holding in *Gaudin* was confined to the right of a "criminal defendant" in a Section 1001 prosecution to have the jury "pass on the 'materiality'" of the allegedly false statement. 515 U.S. at 522-23. It had nothing to do with the government's materiality burden in fraud cases. And for the government to suggest that the Court should require Judge Hall to go through the torment of a federal criminal trial simply because the indictment "us[es] the words of the statute," Dkt. #23 at 6 (Pg. ID# 192), is ludicrous and defeats the purpose of Rule 12. It is a misrepresentation or concealment of a material fact that is the essence of any mail fraud prosecution and the government simply cannot prove that essential element beyond a reasonable doubt in this case. That allows this Court to dismiss Counts 1 and 2 without the burden of a trial. *See United States v. Levin,* 973 F.3d 463, 470 (6th Cir. 1992).

The government concedes that the Count 3 charge in this case is federal program "fraud." Dkt. #23, at 1 (Pg. ID# 187) ("a grand jury returned an Indictment charging . . . one count of federal program *fraud*, in violation of 18 U.S.C. § 666(a)(1)(A)" (emphasis added)). And despite the government's disparagement of the point, *id.* at 11 (Pg. ID#197), materiality is an embedded element of any fraud offense, *see Neder v. United States,* 527 U.S. 1, 22 (1999), that requires the defendant to have "engaged in deception," *Kousisis v. United States,* ____ U.S. ____, 145 S. Ct. 1382, 1390 (2025). The fact that no defendant has previously thought to raise this materiality issue with respect to § 666 fraud does not mean it's wrong. Count 3 charges "fraud" just like Counts 1 and 2 and the government concedes this point. Consequently, the absence of a material misrepresentation also requires dismissal of Count 3.

4

"[T]he fraud statutes do not vest a general power in 'the Federal Government to enforce (its view of) integrity in broad swaths of state and local policymaking.'" *Ciminelli v. United States,* 598 U.S. 306, 312 (2023) (alteration omitted) (quoting *Kelly v. United States,* 590 U.S. 391, 404 (2020)). "If the wire fraud [or the mail fraud[3] or federal program fraud] statute criminalized conduct that merely departed from traditional notions of fundamental honesty and fair play, 'almost any deceptive act could be criminal.' That approach would 'vastly expand[] federal jurisdiction without statutory authorization' by 'mak[ing] a federal crime of an almost limitless variety of deceptive actions traditionally left to state contract and tort law.'" *United States v. Chastian,* No. 23-7038, 2025 U.S. App. LEXIS 19178, *26 (2d Cir. July 31, 2025) (quoting *Ciminelli,* 590 U.S. at 315). This applies to an assistant county attorney who federal prosecutors feel did not work as much as he should have. If the Commonwealth or its retirement system believes that Michael Shane Hall has received some benefit to which he was not entitled the state can pursue its available remedies—whether those be under statute, contract or tort law, or common law unjust enrichment. But there is no federal criminal offense here.

## B. Federal program fraud does not apply here

Federal program fraud cannot be charged in circumstances related to the payment or receipt of "bona fide salary, wages, fees or other compensation paid, or expenses paid or reimbursed, in the usual course of business." 18 U.S.C. § 666(c). The government does not dispute this point; rather, it relies on out-of-circuit cases addressing vastly different circumstances in an attempt to negate this statutory exception.

---

[3] The Supreme Court recently reiterated that "we have construed identical language in the wire and mail fraud statutes *in pari materia.*" *Kousisis v. United States,* ___ U.S. ___, 145 S. Ct. 1382, 1390 n.2 (2025) (cleaned up) (quoting *Ciminelli v. United States,* 598 U.S. 306, 312 n.2 (2023), and citing *Kelly v. United States,* 590 U.S. 391, 398 (2020)).

5

The cases relied on by the government highlight the marked distinction between the present circumstances and those where § 666(c) has been held not to apply. One involved § 666 embezzlement by a city clerk who issued "additional checks" to herself *over and above her regular compensation* amounting to "three years of additional compensation." *United States v. Williams,* 507 F.3d 905, 907, 909 (5th Cir. 2007).  And the others involved deliberate falsification of work time records.  *United States v. Dwyer,* 238 Fed. Appx. 631 (1st Cir. 2007) (defendant falsified timesheets); *United States v. Walsh,* 156 F. Supp. 3d 374, 377, 385 (E.D.N.Y. 2016) (correction officer submitted false timesheets); *United States v. Robinson,* 903 F. Supp. 2d 766, 775 (E.D. Mo. 2012) (defendant submitted "false weekly time sheets falsely certifying" hours worked); *United States v. Abney,* No. 3-97-CR-260-R, 1998 WL 246636, *2 (N.D. Tex. 1998) (Section 666(c) not applied where payroll clerk altered co-employees timesheets so they would be paid for overtime not worked).[4]  All of these cases where § 666(c) has been held not to apply involve a deliberate effort by the defendant to falsify time records relied on in paying salaries.  There is no such circumstance in this case.  It is undisputed that no one submitted false time records or otherwise falsified hours to cause the payment of salary to Michael Shane Hall.

The government glosses over the relevant *Sixth Circuit* precedent.  In *United States v. Mills,* 140 F.3d 630, 631, 633-34 (6th Cir. 1998), the Sixth Circuit held that § 666(c) *applied* and the salaries at issue were bona fide and in the usual course of business even though they were procured through bribery.  *But see contra. United States v. Bryant,* 556 F. Supp. 2d 378, 427-28 (D.N.J. 2008) (declining to apply § 666(c) where salary was obtained through a bribery scheme).  And in *United States v. Mann,* No. 97-6179, 1999 U.S. App. LEXIS 160 (6th Cir. 1999), the Sixth Circuit

---

[4] Another case relied on by the government, *United States v. Ransom,* No. 09-20057-JWL, 2009 U.S. Dist. LEXIS 105118 (D. Kan. 2009), was a wire fraud and theft of public money case involving falsified time and attendance records, consequently, it did not even implicate the § 666(c) exception.

held that § 666(c) *applied* and the salary at issue was bona fide and in the usual course of business even though it was paid "in contravention of state regulations." *Id.* at *10 (salary paid "in contravention of state regulations is not a federal crime").[5] The government asks this Court to ignore these controlling Sixth Circuit cases in favor of a First Circuit case suggesting that whether wages are bona fide is a jury question. *See* Dkt. 23 at 12-13 (Pg. ID# 198-99). But the Sixth Circuit, in both *Mills* and *Mann*, affirmed the district courts' *pretrial dismissal* of § 666 charges based on the § 666(c) exception.

Regardless, these varying approaches to the application (or not) of 18 U.S.C. § 666(c) make it apparent that this is an appropriate case in which to invoke the rule of lenity as there "remains a grievous ambiguity or uncertainty in the statute such that the Court must simply guess as to what Congress intended." *Maracich v. Spears,* 570 U.S. 48, 76 (2013) (citation omitted). Some courts outside the Sixth Circuit, as noted above, have held that affirmatively falsifying time records is not immunized from prosecution by § 666(c). Others have held that "[a] plain reading of . . . section [666(c)], . . ., prohibits a prosecution under § 666 based on an employee's accepting wages for more hours than she actually worked." *United States v. Harloff,* 815 F. Supp. 618, 619 (W.D.N.Y. 1993). While the Sixth Circuit in yet other cases, as noted above, has invoked § 666(c) as a bar to prosecution even where salaries have been procured through bribery or by directly contravening state regulations. So, when, exactly, is § 666(c) properly invoked, and what conduct, exactly, does it shield from federal prosecution? And why can't the courts agree on Congress's intent as to the application of the 666(c) exception?

---

[5] And we must not forget that the Kentucky Court of Appeals has held that the very conduct at issue in this case is not criminal. *See* Dkt. #22-1 at 14-17 (Pg. ID# 140-43) (citing *Commonwealth v. Craft,* No. 94-CA-001432-MR).

In this instance, Judge Hall made no representations as to the hours worked by Michael Shane Hall during any pay period. At most, the payroll certification forms represented that Hall was employed by the county attorney's office on a part-time basis and that he worked less that 30 hours per week during the pay period. And as noted, the statutory duties of an assistant county attorney are virtually non-existent and certainly do not require any minimum number of hours. *See* KRS § 69.300 (requiring only that assistant county attorneys be licensed to practice in the Commonwealth, reside in the county in which the county attorney is elected or within 30 miles of the county line or in a contiguous county, and be under the direction and control of the county attorney). So, how exactly, can it be credibly argued that Hall's salary was not "bona fide" or not paid "in the usual course of business" by the PAC? A salary procured by bribery *is* bona fide and in the usual course of business as is one received in direct contravention of state regulations, but a salary paid based on (supposedly) a certification that the person fulfilled the most ambiguous of "statutory duties" and truthfully reporting that the person did not work 30 hours per week during the pay period is not?

The varying interpretations of § 666(c) leave even the most vigilant of readers (let alone, actors) wondering what qualifies as "bona fide salary, wages, fees or other compensation paid, or expenses paid or reimbursed, in the usual course of business." 18 U.S.C. § 666(c). Because "any fair reader" of § 666(c) "would be left with a reasonable doubt about whether it covers the defendant's charged conduct" this Court is "bound by the ancient rule of lenity to decide the case . . . not for the prosecutor but for the presumptively free individual." *Snyder v. United States,* 603 U.S. 1, 20 (2024). Count 3 must be dismissed.

Finally, related to Count 3, the government asserts that Judge Hall was an agent of the Prosecutors Advisory Council because he had the authority "to commit the funds of the PAC in

8

setting and issuing salaries and expenses of the" Pike County Attorney's Office. Dkt. #23 at 14 (Pg. ID# 200). But the controlling Kentucky statutes say just the opposite—more of those pesky "irrelevant state laws," as the government refers to them. KRS § 15.770(1) only allows county attorneys to appoint assistant county attorneys "with the approval of the Prosecutors Advisory Council." KRS § 15.770(2) restricts the number of assistant county attorneys a county attorney may appoint based on the "advice and consent of the Prosecutors Advisory Council." And KRS § 15.770(5) provides that the salaries of assistant county attorneys "shall be paid from the State Treasury," not by the county attorney.

Importantly, the government does not deny that Judge Hall's relationship to the PAC is the relevant relationship for determining whether he was an "agent" for 18 U.S.C. § 666(a)(1)(A) purposes. The statutes—the *law*, not the *facts*—clearly establish that he was *not* an "agent" of the PAC. As a result, Count 3 must be dismissed.

## CONCLUSION

For the foregoing reasons, the defendant, Howard Keith Hall, respectfully requests that the Court dismiss the indictment.

Respectfully submitted,

TRUE GUARNIERI AYER, LLP

/s/ J. Guthrie True
J. Guthrie True
124 West Clinton Street
Frankfort, KY 40601
Telephone: (502) 605-9900
Facsimile: (502) 605-9901
E-mail: gtrue@truelawky.com

Counsel for Defendant

**CERTIFICATE OF SERVICE**

    The undersigned hereby certifies that a copy of the foregoing has been served on all counsel of record this 18th day of August, 2025, by filing a copy of the same with the Electronic Court Filing System of the United States District Court for the Eastern District of Kentucky.

                                          /s/ J. Guthrie True
                                          Counsel for Defendant