UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>HOWARD KEITH HALL,<br><br>    Defendant. | Crim. No. 3:25-cr-00005-GFVT-MAS<br><br>**MEMORANDUM OPINION**<br>**&**<br>**ORDER** |

\*\*\* \*\*\* \*\*\* \*\*\*

This matter is before the Court on the United States' *Daubert* Motion to Exclude the testimony of Harold Mac Johns [R. 45.] For the following reasons, the Court will grant in part and deny in part.

**I**

Defendant Howard Keith Hall is the former County Attorney of Pike County, Kentucky. [R. 21-8 at 1.] Hall is a current Pike County Circuit Court Judge. *Id.* The United States charged Hall with two counts of mail fraud in violation of 18 U.S.C. § 1341 and one count of theft of government funds in violation of 18 U.S.C. § 666(a)(1)(A). [R. 1.] The charges stem from an alleged scheme in which Hall hired Attorney A[1] as an Assistant County Attorney and paid this attorney approximately $440,587 in state salary and benefits despite the attorney performing little to no work for the Pike County Attorney's Office ("PCAO"). *Id.* While Attorney A served

---

[1] The Government refers to the attorney at issue as "Attorney A" throughout their briefing. Defendant Hall notes that Attorney A's identity is Michael Shane Hall, no relation to the Defendant. [R. 21-8 at 2.] To prevent confusion, this Memorandum Opinion will refer to Michael Shane Hall as "Attorney A."

as an Assistant County Attorney, Hall participated in the private practice of law at Attorney A's law firm and received various payments described as "Distributions" totaling $505,900. *Id.* The United States alleges that Hall committed mail fraud by signing and mailing false payroll certifications indicating that Attorney A fulfilled his duties as a part time assistant county attorney despite doing no work.

The United States filed this Motion to Exclude in response to Hall's disclosure noticing Harold Mac Johns, the former County Attorney of Todd County. Hall's disclosure anticipates that Johns will testify and offer opinions on several topics, including the various responsibilities of a county attorney's office; the full-time and part-time system used in Kentucky for county attorney offices; the statutory duties of an assistant county attorney pursuant to KRS § 69.300; the ability of county attorneys and assistant county attorneys to participate in the private practice of law; the private relationship between Hall and Attorney A; the particular allegations of the Indictment; and other topics or issues that may arise from the government's case-in-chief. [R. 45-2 at 3–5.] The United States raised four arguments in support of its motion to exclude the testimony of Johns. First, the government charges that the Court should exclude Johns' testimony as untimely. [R. 45 at 6.] Second, that the Court should exclude Johns' testimony for making inadequate disclosures. *Id.* at 6–8. Third, that Johns' testimony does not meet any provision of Rule 702. *Id.* at 8–10. Fourth, that Johns' testimony invades the province of the Court and jury. *Id.* at 10–12. Indirectly, the government also argues that Johns does not meet the definition of a lay opinion witness under Fed. R. Evid. 701. *Id.* at 2, n. 1.

## II

Under the Federal Rules of Evidence, witnesses can offer testimony in two forms: lay opinion testimony or expert testimony. "If a witness is not testifying as an expert, testimony in

the form of an opinion is limited to one that is: (a) rationally based on the witness's perception; (b) helpful to clearly understand the witness's testimony or to determine a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701.  The drafters of the Rules note that a party cannot "evade the witness disclosure requirements set forth in… Fed. R. Crim. P. 16 by simply calling an expert witness in the guise of a layperson."  Fed. R. Evid. 701 advisory committee's note to 2000 amendment.  A lay witness may only testify to a matter if they have "personal knowledge" of the matter.  Fed. R. Evid. 602.  The "personal knowledge" requirement does not apply to witness's expert testimony. *Id.*

Parties may also call witnesses who offer "expert" testimony.  The Supreme Court imposes a gatekeeping function on district court judges to "ensure that any and all [expert] testimony… is not only relevant, but reliable." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993).  Rule 702 enumerates the test for determining whether to ensure that an expert's testimony is reliable:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702.  *See also Daubert*, 509 U.S. at 589–95.  These requirements do not apply only to scientific or technical knowledge.  An expert witness may draw on non-scientific or non-technical "specialized" knowledge so long as the expert testimony "has a reliable basis in the knowledge and experience of [the relevant] discipline." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 149 (1999) (citing *Daubert*, 509 U.S. at 590).

3

The Federal Rules of Criminal Procedure impose special requirements for the use of expert testimony in criminal cases. Rule 16 imposes an obligation to disclose "any testimony that the defendant intends to use under Federal Rule of Evidence 702, 703, or 705 during the defendant's case-in-chief at trial." Fed. R. Crim. P. 16(b)(1)(C)(i). The Court sets the time by which the defendant may make such disclosures and must provide an opportunity for the government to meet the defendant's evidence.[2] Fed. R. Crim. P. 16(b)(1)(C)(ii). The rule also states with specificity what the defendant's disclosure must contain. For each expert witness, the defendant must enclose "a complete statement of all opinions the defendant will elicit from the witness in the defendant's case-in-chief; the bases and reasons for them; the witness's qualifications, including a list of all publications authored in the previous 10 years; and a list of all other cases in which, during the previous 4 years, the witness has testified as an expert at trial or by deposition." Fed. R. Crim. P. 16(b)(1)(C)(iii).

**A**

The Court turns first to the government's procedural arguments. The United States argues that the Court should exclude the noticed expert testimony because it is (1) untimely and because (2) the notice fails to state what Johns' opinion will be on several of the subjects. The issue before the Court is whether to exclude Johns' testimony because of either of these alleged procedural deficits.

"The Constitution guarantees a criminal defendant 'a meaningful opportunity to present a complete defense.'" *United States v. Pancholi*, 148 F.4th 382, 389 (6th Cir. 2025) (quoting

---

[2] "At the government's request, the defendant must disclose to the government, in writing, the information required by (iii) for any testimony that the defendant intends to use under Federal Rule of Evidence 702, 703, or 705 during the defendant's case-in-chief at trial, ***if***: the defendant requests disclosure under (a)(1)(G) and the government complies; or the defendant has given notice under Rule 12.2(b) of an intent to present expert testimony on the defendant's mental condition." Fed. R. Crim. P. 16(b)(1)(C)(ii) (emphasis added).

*Crane v. Kentucky*, 476 U.S. 683, 690 (1986)). The right of a defendant to present witnesses in their own defense is a fundamental and essential attribute of the adversary system. *Taylor v. Illinois*, 484 U.S. 400, 408 (1988). But the legal system places limits on this right, most notably by requiring defendants to comply with the requirements of the Federal Rules of Evidence and the Federal Rules of Criminal Procedure. *See Pancholi*, 148 F.4th at 389.

1

Criminal defendants must submit expert witness disclosures within the time set by the district court's orders or local rules. Fed. R. Crim. P. 16(b)(1)(C)(ii). "The defendant must, at the government's request, give to the government a written summary of any [expert] testimony that the defendant intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence as evidence at trial" if the defendant has made a similar request to the government. Fed. R. Crim. P. 16(b)(1)(C). "If a party fails to comply with this rule, the court may: (A) order that party to permit the discovery or inspection ... ; (B) grant a continuance; (C) prohibit that party from introducing the undisclosed evidence; or (D) enter any other order that is just under the circumstances." Fed. R. Crim. P. 16(d)(2). "District courts have broad discretion to exclude untimely disclosed expert-witness testimony." *Pride v. BIC Corp.*, 218 F.3d 566, 578 (6th Cir. 2000). Courts examine three factors when considering whether to exclude an expert's testimony based on a discovery violation such as an untimely disclosure: (1) the reason for the party's delay, including whether the party acted intentionally or in bad faith; (2) the degree of prejudice to the opposing party; and (3) whether the prejudice can be cured with a less severe action. *United States v. Chipperfield*, No. 5:17-118-KKC, 2020 U.S. Dist. LEXIS 30548, at *9 (E.D. Ky. Feb. 24, 2020) (citing *United States v. Wolford*, 656 F. App'x 59, 62 (6th Cir. 2016); *United States v. Maples*, 60 F.3d 244, 247 (6th Cir. 1995)). The suppression of evidence is an

"undesirable remedy reserved for cases of incurable prejudice or bad faith conduct demanding punishment by the court." *Maples*, 60 F.3d at 247.

Here, the Court's standing pretrial and trial management order governs the defendant's disclosure of Rule 16 materials. *See* [R. 11-1 at 1–2.] "[W]ithin ten (10) days after the arraignment, the Office of the United States Attorney and the defense counsel shall confer and, upon request, the defendant(s) shall produce all items discoverable pursuant to Rule 16(b) of the Federal Rules of Criminal Procedure." *Id.* The Court's order did not include any specific language governing the timely notice of experts.[3] Nonetheless, "expert witnesses" clearly fall under Rule 16(b) disclosure requirements, and thus the language of the Court's order sufficiently captures the defendant's responsibility to provide the government with notice of any expert testimony within 10 days after the arraignment, upon request of the government. The United States requested a "written summary of any testimony, which any Defendant intends to use under F.R.E. 702, 703, and 705" on May 21, 2025. [R. 45-3.] Hall's initial appearance and arraignment took place on May 16, 2025, before Magistrate Judge Matthew A. Stinnett. [R. 9.] Per the court's order, Hall should have provided the government with notice of expert testimony on or before May 26, 2025. This Court continued Hall's trial to November 10, 2025, after holding a telephonic scheduling question with counsel for Hall and the United States. [R. 18.]

Turning to the three-factor test, the Court first evaluates the reason for Hall's delay and whether Hall acted in bad faith. Hall produced the disclosure noticing Johns on October 14, 2025, roughly one month before the start of the jury trial on November 7, 2025. [R. 45-2.] The Court does not find that this delay is the result of bad faith. Since the telephonic conference on June 10, 2025, the Court has held a motion hearing on Hall's motion to dismiss the indictment,

---

[3] *Cf. Chipperfield*, 2020 U.S. Dist. LEXIS 30548 at *2 (where "[t]he Court ordered that notice of experts be given 45 days prior to trial.").

6

Magistrate Judge Stinnett ruled on a motion to quash a subpoena issued to the Kentucky Judicial Conduct Commission, and Hall filed two motions *in limine*. [Rs. 37, 43, 40, 41.] Unlike the untimely expert notice in *Wolford*, Hall submitted this disclosure several weeks before the start of trial, giving the United States ample notice of an anticipated witness.[4] Hall did not submit this witness in an effort to throw sand into the gears of the judicial process, but to provide context and testimony about the inner workings of a county attorney's office, an issue that cuts to the heart of the case. The Court does not find that Hall acted in bad faith, and the reasons for the delay appear to be related to the case's complexity and the accompanying number of motions filings, hearings, and orders.

Nor is the Court convinced that the late notice of this witness prejudices the government. The government has had time to raise its motion to exclude with this Court. None of Johns' proposed testimony raises novel issues or arguments that the government is unfamiliar with as it pertains to Hall's defense. This is particularly true where any prejudice to the government can be cured with a less severe course of action. The Court is reluctant to exclude a criminal defendant's witness from taking the stand because of supposed untimeliness. The Court has tools at its disposal to cure any prejudice by limiting Johns' admissible testimony. This includes deciding whether to admit his testimony as Rule 702 expert testimony, limiting the scope of his testimony on certain subjects, and barring the discussion of certain subjects altogether. For these reasons, the Court declines to find that Hall's late disclosure warrants the complete exclusion of Johns as a witness, particularly where the Court has "broad discretion" to decide these issues. *See Pride*, 218 F.3d at 566.

---

[4] In *Wolford*, the Sixth Circuit upheld the district court's decision to exclude the testimony of an expert witness offered three days after the commencement of the jury trial. 656 F. App'x at 62–63. The district court also held that the proffered testimony focused on an irrelevant issue. *Id.* at 63.

**2**

The Court turns next to the government's second procedural argument: that Johns' testimony should be excluded for inadequate disclosures. Rule 16 requires the disclosure for each expert to contain "a complete statement of all opinions that the defendant will elicit from the witness in the defendant's case-in-chief; the bases and reasons for them; the witness's qualifications, including a list of all publications authored in the previous 10 years; and a list of all other cases by which, during the previous 4 years, the witness has testified as an expert at trial or by deposition." Fed. R. Crim. P. 16(b)(1)(C)(iii). "The Rule requires a summary of the expected testimony, not a list of topics." *United States v. Duvall*, 272 F.3d 825, 826 (7th Cir. 2001). The party authoring the disclosure must "identify what opinion the expert would offer on [the] subjects" contained in the notice. *Id.* The Sixth Circuit has held that inadequate disclosure violations can be harmless where the party moving to suppress has not shown that the lack of detail affected their ability to counter the evidence or that it presented an "undue surprise." *United States v. Williams*, 900 F.3d 486, 489 (6th Cir. 2018). "The exclusion of testimony is not the only remedy available to the district court for a violation of Rule [16]." *Duvall*, 272 F.3d at 829; *see also* Fed. R. Crim. P. 16(d)(2).

Hall's disclosure included Johns' qualifications as the Todd County Attorney, a member of the Prosecutors Advisory Council, and as a private practitioner. [R. 45-2 at 3.] The disclosure listed several topics, but the government argues that "the disclosure fails to address what Mr. Johns' opinion would be on several of the subjects noticed." [R. 45 at 7.] Several of the topics do include an opinion statement.[5] Thus, the Court faces a situation where Hall has included opinion statements as to some topics but has not provided opinion statements for others.

---

[5] *E.g.*, that it is Johns' opinion that "County Attorneys have discretion as to how and how much they use their Assistant County Attorneys, the fact there is no minimum required number of hours per week, per month or per year

Without yet addressing whether Johns can provide expert testimony under Rule 702, the Court is not convinced that the deficiencies require the exclusion of Johns' entire testimony. The government has not claimed in its motion that the lack of detail affects their ability to counter the evidence. *See id.* at 6–8. The government's main argument is that "under the Defendant's logic, anyone who has served as a county attorney in Kentucky is qualified to offer an opinion at trial." *Id.* at 7. While that inference may be true, the Defendant is not attempting to offer a parade of county attorneys at trial. It is not a reason to exclude Johns from testifying at all. Similarly, the government is not burdened by an "undue surprise" that prevents their "adequate opportunity to prepare" to prepare for trial. *Williams*, 900 F.3d at 489.

Excluding the witness is not the only remedy available to the court. Fed. R. Crim. P. 16(d)(2). As previously articulated, the Court may appropriately set boundaries on Johns' admissible testimony and issue other orders that are "just under the circumstances." *Id.* The Court will not exclude entirely on the basis of inadequate disclosures.

## B

The Court turns now to Rule 702. The question before the court is whether Johns' proposed expert testimony meets the threshold requirements of Rule 702, *Daubert*, and its progeny.

Rule 702 functions as a broad rule of admissibility. *See Mannino v. International Mfg. Co.*, 650 F.2d 846, 849 (6th Cir. 1981); *see Hurst v. United States*, 882 F.2d 306, 311 (8th Cir. 1989) ("a trial court should exclude an expert opinion only if it is so fundamentally unsupported

---

that an Assistant Attorney must work, but that assistants need only be available to the County Attorney as needed." [R. 45-2 at 4.]; that the maintenance of a private law practice while serving as a county attorney and the employment of their law partners or associate attorneys from their private law practice as assistant county attorneys is "common practice in Kentucky, and particularly so in rural counties." *Id.*; and that "County Attorneys, Assistant County Attorneys, and the other staff of the office have not historically been required to complete daily or weekly time sheets/records by law or by the IPAC… [and] that the PAC Payroll Certification forms are not time sheets/records." *Id.* at 5.

9

that it cannot help the factfinder"); *United States v. Nixon*, 694 F.3d 623, 629–30 (6th Cir. 2012) (holding that the district court did not err in allowing an inexperienced FBI agent to provide expert testimony, and that any weakness in the agent's qualifications would go to the weight of the testimony rather than its admissibility).

Nonetheless, trial courts must exercise a gatekeeping function by inquiring into both the relevance and reliability of proffered expert witnesses. *Daubert*, 509 U.S. at 589. This gatekeeping function applies not only to scientific or technical testimony, but to all expert testimony. *Kumho*, 526 U.S. at 147. The Sixth Circuit employs a two-part test for admitting expert testimony. "First, is the expert qualified and the testimony reliable? And second, is the evidence relevant and helpful to the trier of fact?" *J.B-K.-1 v. Sec'y of Ky. Cabinet for Health & Fam. Servs.*, 462 F. Supp. 3d 724, 732 (E.D. Ky. 2020), *aff'd sub nom. J. B-K. by E.B. v. Sec'y of Kentucky Cabinet for Health & Fam. Servs.*, 48 F.4th 721 (6th Cir. 2022). Expert testimony is reliable if it meets the non-exhaustive factors articulated in *Daubert* and codified in Rule 702. District courts have considerable leeway in deciding how to determine whether non-scientific expert testimony is reliable. *Kumho*, 526 U.S. at 152. Testimony is relevant if it helps the factfinder understand the facts. *Daubert*, 509 U.S. at 591.

Opinions formed through personal knowledge and experience "do not easily lend themselves to scholarly review or to traditional scientific evaluation." *First Tenn. Bank Nat. Ass'n v. Barreto*, 268 F.3d 319, 335 (6th Cir. 2001). In some cases, the *Daubert* factors may be pertinent, while in other cases reliability determinations may focus on personal knowledge or experience. *Id.* (citing *Kumho*, 526 U.S. at 150). In *Barreto*, the Sixth Circuit reviewed the district court's finding that a banker with 40 years of experience qualified as an expert witness on the question of whether a lender acted prudently when it allowed its client to negotiate a letter of

10

credit and document dispute on its behalf. *Id.* at 332. There, First Tennessee argued that the expert's lack of familiarity with some aspects of banking relationships and the failure of the expert's testimony to rely on technical methodology required exclusion. *Id.* at 333. The Sixth Circuit held that the district court "correctly reasoned that such unfamiliarity merely affected the weight and credibility of his testimony, not its admissibility." *Id.* The fact that the expert's opinions were not subject to peer review or empirical analysis did not render them unreliable, because the familiar *Daubert* reliability factors are of "limited help" in assessing experiential expertise. *Id.* at 334–35. The Sixth Circuit did not disturb the district court's ruling that the banker's specialized knowledge assisted the jury in understanding the evidence. *Id.* at 333.

Here, too, any expert testimony offered by Johns does not lend itself easily to review via the *Daubert* factors. Johns served as the Todd County Attorney for 28 years from January 1990 until September 2018. [R. 45-2 at 3.] He served on the Prosecutors Advisory Council for seven years from 1997 until 2004. *Id.* A court cannot measure his experience and service as a county prosecutor through the testing of a technique or theory, peer review, publication, or error rates. *See Daubert*, 509 U.S. at 593–94. Further, the United States raises a valid point that Hall's "omission of Mr. Johns' actual opinions… effectively precludes him from establishing, as the proponent of the testimony, the testimony's relevance and reliability." The Court thus must approach the reliability of Johns' testimony as the Middle District of Tennessee did in *Barreto* — by assessing Johns' technical or "other specialized" knowledge.

Generally, Hall submits that Johns can provide testimony about how an elected county attorney runs their office and the functions of the county attorneys in general.[6] Johns appears to

---

[6] By explaining "the various responsibilities of the County Attorney's office;" the "bi-furcated prosecutorial system used in Kentucky;" "private law practice by County Attorneys and Assistant County Attorneys;" "the role of assistant county attorneys in rural counties;" "county attorneys are not required to maintain an office in the county courthouse;" and other points raised in Hall's disclosure statement to the government. *See* [R. 45-2 at 3–5.]

11

be qualified to testify on this topic, given his 28 years of service as the Todd County attorney. He also served on the Prosecutors Advisory Council for seven years and can provide insight into that body and its relationship to the individual county attorneys' offices. The government argues that Johns should be barred from testifying because the court cannot apply the *Daubert* factors neatly. [R. 45 at 9.] The Sixth Circuit rejected the logic of this argument in *Barreto*. *See* 268 F.3d at 334 ("Contrary to First Tennessee's argument, the fact that Iorlano's opinions may not have been subjected to the crucible of peer review, or that their validity has not been confirmed through empirical analysis, does not render them unreliable and inadmissible."). The government argues that "the number of years someone has served as a county attorney does not translate to facts or data that this Court can evaluate for reliability under Rule 702 or *Daubert*." Again, the Court finds this line of thinking unpersuasive. The Sixth Circuit found that the banker's "expert testimony derived largely from Iorlano's own practical experiences throughout forty years in the banking industry" met the reliability standard demanded after both *Daubert* and *Kumho*, suggesting that length of time in a particular field be indicative of reliability for the purposes of this analysis. *Id.* at 335. Johns' 28 years as a county prosecutor and seven years as part of the Prosecutors Advisory Council support the reliability determination that he is qualified to opine on the ways in which a Kentucky county attorney runs their office.

      Finding that Johns' proposed testimony would be reliable, the Court next asks whether it would be relevant. *J.B-K.-1*, 462 F. Supp. 3d at 732. Testimony is relevant if it is helpful to the trier of fact. Johns' testimony would assist the jury in understanding the inner workings of a county attorney's office, the procedures by which county attorneys hire staff, and the ways in which the individual attorney's offices work with the Prosecutors Advisory Council and other offices within the Commonwealth's state government. This is particularly true in a criminal

case, where our system does not require a defendant to take the witness stand. U.S. Const. amend. V. In other words, Hall's only way to present evidence regarding how a county prosecutor's office functions — without taking the stand himself — is to call another county prosecutor. The Sixth Amendment's compulsory process clause guarantees a criminal defendant the right to call witnesses that are "material and favorable to his defense." *United States v. Valenzuela-Bernal*, 458 U.S. 858, 867 (1982). Hall's filings and briefs throughout the course of this action suggest that a prominent aspect of his defense rests on the hiring responsibilities of the duly elected county attorney. Without taking the stand himself, the next best option to introduce such testimony is an experienced county attorney such as Johns who served in the same position, albeit in a different county, for 28 years.

Johns' extensive experience as a county prosecutor and his personal knowledge as to the responsibilities, duties, and discretion of a county attorney meet both the reliability and relevance elements required by Rule 702. "The text of Rule 702 expressly contemplates that an expert may be qualified on the basis of experience." Fed. R. Evid. 702 advisory committee's note to 2000 amendments. "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 595. As with any evidence, the Court may issue limiting instructions informing the jury on the proper use of the testimony. *See United States v. Lavictor*, 848 F.3d 428, 448 (6th Cir. 2017).

## C

The Court turns next to the government's concern that "several topics noticed by Johns invade the province of the Court and the jury by opining on his interpretation of the law or the

13

Defendant's intent."  [R. 45 at 10.]  The issue before the Court is to determine which topics, if any, reach this level of impermissibility.

"In a criminal case, an expert witness must not state an opinion about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense."  Fed. R. Evid. 702(b).  "It is improper for an expert witness to testify concerning legal requirements, as this 'invade[s] the province of the court to determine the applicable law and to instruct the jury as to that law.'"  *In Re Air Crash Disaster*, 86 F.3d 498, 523 (6th Cir. 1996) (quoting *Torres v. County of Oakland*, 758 F.2d 147, 150 (6th Cir. 1985)).  "Expert witnesses may not testify to legal conclusions or to the applicability or interpretation of a particular statute or regulation."  *McMillen v. Windham*, No. 3:16-cv-00558-RGJ-CHL, 2019 U.S. Dist. LEXIS 144298, at *61 (W.D. Ky. Aug. 26, 2019).  Witnesses may not tell jurors what result to reach on the ultimate issues in a case.  *Berry v. City of Detroit*, 25 F.3d 1342, 1353–54 (6th Cir. 1994).

Several of Johns' noticed topics would violate the prohibition against offering conclusions or interpretations of the law.  It is immediately apparent that *any* testimony, expert or lay, regarding the interpretation or applicability of KRS § 69.300 would violate the prohibition.  Johns can testify as to the statutory duties of an assistant county attorney as set out in KRS § 69.300, but under no circumstances could Johns offer an opinion as to whether Hall's actions were legal or sanctioned under the laws of the Commonwealth of Kentucky.  Johns similarly cannot provide any testimony as to whether the provisions of KRS Chapter 18A "cover the employees of the County Attorney's office," whether "employees of the County Attorney's office are [covered] by the merit system," or whether employees of the County Attorney's office are state employees.  Johns similarly cannot testify as to whether there are or are not legal

14

requirements for assistant county attorneys to work a minimum number of hours.  Johns cannot testify to Hall's willfulness to commit any act or that Hall did or did not have the requisite intent to defraud.  *See* Fed. R. Evid. 704(b); *see United States v. Gallion*, 257 F.R.D. 141, 156 (E.D. Ky. 2009).

Plainly, much of Johns' proposed testimony violates the prohibition against a witness testifying about legal requirements or interpretations of statute.  By way of example, Johns can testify to the day-to-day operations of a county attorney's office.  Johns can testify that it is common to hire assistant county attorneys and describe how that process works.  But Johns cannot testify that Hall's acts were legal or sanctioned by Johns' own interpretation of Kentucky's statutes.  This is not an exhaustive analysis of what Johns may or may not say on the witness stand.  But this much is clear — any testimony suggesting that Hall's actions were legal or appropriate under the laws of the Commonwealth or that the interpretation of the statutes requires a certain outcome is inadmissible.

**D**

Finally, the Court addresses the government's argument that Johns cannot serve as a fact witness.  [R. 45 at 2.]  The issue before the Court is whether any of Johns' proposed testimony constitutes lay witness opinion testimony under Rule 701 of the Federal Rules of Evidence.

"Testimony in the form of [a non-expert] opinion is limited to one that is (a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702."  Fed. R. Evid. 701.  "Limitation (a) is the familiar requirement of first-hand knowledge or observation."  *Id.*, advisory committee notes to 1972 proposed rules.  "A [lay] witness may testify to a matter only if evidence is introduced to support

15

a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may consist of a witness's own testimony." Fed. R. Evid. 602. "The prototypical example of [lay-witness testimony] relates to the appearance of persons or things, identity, the manner of conduct, competency of a person, degrees of light or darkness, sound, size, weight, distance, and an endless number of items that cannot be described factually in words apart from inferences." *Harris v. J.B. Robinson Jewelers*, 627 F.3d 235, 241 (6th Cir. 2010) (internal citation omitted).

The government raises a fair point that it is unclear whether Johns can provide lay witness testimony in this case. Johns never served in the Pike County Attorney's office. It is not clear from the record before the Court that Johns was ever personally involved in any of the facts at issue in this case.[7] The expert disclosure indicates that Johns served as the Todd County attorney during the "audit of select County Attorney offices (including Pike and Todd counties) covering activity during the period between July 1, 2017 and June 30, 2019," which would allow him to offer his firsthand personal knowledge of that matter. [R. 45-2 at 5.] Beyond this, it is not clear that Johns has any additional testimony to offer based "on the witness's perception" that are not based on his "other specialized knowledge." Fed. R. Evid. 701. This indicates to the Court that the bulk of Johns' testimony as to the functions of a county attorney's office will fall under Rule 702, as discussed in Section II(B) of this Memorandum Opinion.

### III

The Constitution guarantees the right of a criminal defendant to present witnesses in their own defense within the guardrails provided by the Federal Rules of Criminal Procedure and the

---

[7] Counts 1 and 2 of the Indictment relate to payroll certifications mailed by Hall dated April 30, 2020, and May 15, 2020, respectively. [R. 1.] By 2020, Johns was neither serving as the Todd County Attorney (1990 to 2018) nor as a member of the Prosecutors Advisory Council (1997 to 2004). [R. 45-2 at 3.]

Federal Rules of Evidence.  Hall's noticed witness, Harold Mac Johns, may provide expert testimony as to the role, responsibilities, and functions of a county attorney, based on his specialized experience as a county prosecutor who served for 28 years.  Johns may not, however, opine on the meaning or interpretation of any statutes, laws, or regulations, as such testimony invades the province of the court.  Johns may not testify to Hall's intent to defraud, willfulness to commit a crime, or any other opinion that reaches an ultimate finding of fact left for the jury to determine.  Johns may provide lay testimony to any topic that he had personal knowledge of, although the Court notes that such topics are likely limited.  In preliminarily determining that Johns may testify to matters covered by Federal Rule of Evidence 702, the Court reserves the right to further rule on this matter or otherwise modify this order during the course of Hall's jury trial.

Accordingly, and the Court being otherwise sufficiently advised, it is hereby **ORDERED** that:

1. The United States' Motion to Exclude **[R. 45]** is **DENIED in part** to the extent that the Court will permit Harold Mac Johns to provide Rule 702 testimony, consistent with this Memorandum Opinion;

2. The United States' Motion to Exclude **[R. 45]** is **GRANTED in part** to the extent that Johns is barred from:

    a. Stating an opinion about whether the defendant did or did not have a mental state or condition constituting an element of the crimes charged or of a defense;

    b. Offering testimony concerning legal requirements;

    c. Offering testimony amounting to legal conclusions or to the applicability or interpretation of a particular statute, law, or regulation;

    d. Telling jurors what result to reach on the ultimate issues in this case; and

    e. Providing any other improper opinion testimony on the law.

This the 6th day of November, 2025.

*Gregory F. Van Tatenhove*
United States District Judge